**GATESCO Q.M., LTD. d/b/a Quail Meadows Apartments, Appellant,**

v.

**The CITY OF HOUSTON and Bill White, Individually, Appellees.**

No. 14–09–00176–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 28, 2010.

Steven Doyle Poock, Sugar Land, Robert Gaines Gibson, Rosenburg, for appellant.

Bertrand L. Pourteau, II, Elizabeth L. Stevens, Houston, for appellees.

Panel consists of Justices FROST, BOYCE, and SULLIVAN.

## OPINION

KEM THOMPSON FROST, Justice.

The primary issue in this appeal is the proper construction of section 13.042 of the Texas Water Code, a provision that has been construed in conflicting ways by various Texas courts of appeals. In the case under review a consumer, the owner of an apartment complex, sought declaratory and injunctive relief against a municipality that provided water service to the complex. The trial court dismissed the consumer's claims for lack of subject-matter jurisdiction. Our dual charge on appeal is to determine whether section 13.042 deprived the trial court of subject-matter jurisdiction over these claims and whether the consumer sufficiently pleaded waivers of governmental immunity as to the relief it sought. We affirm in part and reverse and remand in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant/plaintiff Gatesco Q.M., Ltd. d/b/a Quail Meadows Apartments (hereinafter "Gatesco") owns the Quail Meadows Apartments (hereinafter the "Apartments") in Houston, Texas. Appellee/defendant The City of Houston (hereinafter the "City") provides the Apartments with water service. In the trial court below, Gatesco sued the City and the City's mayor, appellee/defendant Bill White, in his individual capacity. In its Fifth Amended Petition, Gatesco made the following factual allegations:

- Gatesco has been paying its water bill to the City in a timely manner for years.
- Nevertheless, the City assessed a $1,020.03 late fee for a payment which, according to the City was "hours late." [1] The lateness of this payment did not cause the City to take any action other than to assess the late fee. [2] The City made no collection effort, mailed no notice to Gatesco, hung no notice on Gatesco's door, and made no effort to disconnect Gatesco's water service based on this late payment.
- This late fee bears no relationship to any costs incurred by the City and is merely a means of raising revenue to support the City government. The purpose of this late fee is to support the City's water and sewer systems, and this fee is not an estimate of any

1. The evidence at trial showed that the payment in question was due on or before November 27, 2006, and that Gatesco paid the amount due on November 28, 2006.

2. On appeal, Gatesco has not disputed that this payment was late.

cost incurred by the City. This late fee is a tax that was not properly authorized by statute, in violation of the Texas Constitution.

- Gatesco pursued its administrative remedies regarding the late fee, and the hearing officer held an administrative hearing on December 18, 2006. The hearing officer, an employee of the City, upheld the late fee, and Gatesco had no further administrative remedies.

- Gatesco filed this suit on January 23, 2007, and on that same date, Gatesco obtained a temporary restraining order, preventing the City from shutting off the water supply to the Apartments (hereinafter the "TRO"). On February 6, 2007, the TRO expired by operation of law.

- Following a hearing, on February 5, 2007, the trial court signed an order denying Gatesco's application for a temporary injunction but did not dissolve the TRO. Although it was understood at the hearing that Gatesco would pay the late fee that day, the City, in violation of the TRO which had not yet expired, rushed to shut-off the water to the Apartments despite Gatesco having paid the late fee in full at 12:47 p.m. on February 5, 2007, the day before the TRO expired.[3]

- Although Gatesco had enjoyed water service with the City for over eleven years, the City demanded a security deposit in excess of $35,000. Never in the preceding eleven years had the City required any deposit from Gatesco. The City's excuse for requiring the deposit was that the City had shut-off the water supply to the Apart-

ments. This conduct is vindictive, retaliatory, arbitrary, and capricious.

- Gatesco pursued its administrative remedies regarding this allegedly illegal requirement of a security deposit, and the hearing officer held an administrative hearing on April 10, 2007. The hearing officer, an employee of the City, upheld the requirement of a security deposit in excess of $35,000, and Gatesco had no further administrative remedies.

After Gatesco exhausted its administrative remedies regarding the security deposit, Gatesco amended its petition to complain of both the late fee and the security deposit. In its live petition, Gatesco asserts various complaints regarding the late fee and the security deposit and seeks declaratory and equitable relief. The parties agreed to a second temporary restraining order. The City filed a plea to the jurisdiction based primarily on governmental immunity, and Gatesco filed a response in opposition. Without ruling on the City's plea, the trial court conducted a bench trial on the merits on May 25, 2007, and took the case under advisement. The following week, on June 1, 2007, instead of ruling on the merits, the trial court signed an order granting the City's plea to the jurisdiction. This order was interlocutory because it did not dispose of Gatesco's claims against White, individually. More than a year later, on December 2, 2008, the trial court signed a final judgment, in which it incorporated its order sustaining the City's plea to the jurisdiction and rendered a take-nothing judgment on the merits as to Gatesco's claims against White. Although Gatesco has not assigned error or presented appellate argument challenging the trial court's judgment as to the claims against White, in this appeal

---

**3.** Evidence at trial showed that the City shut off water service to the Apartments at 1:04 p.m. on February 5, 2007.

Gatesco has asserted in a single issue that the trial court erred in sustaining the City's plea to the jurisdiction.

## II. STANDARD OF REVIEW

We review de novo a trial court's ruling on a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004). When a party has filed a plea to the jurisdiction challenging the pleadings, a reviewing court must construe the pleadings liberally in favor of the pleader and look to the pleader's intent. *See id.* If the facts alleged affirmatively demonstrate the trial court's jurisdiction to hear the cause, the plea to the jurisdiction must be denied. *See id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction, but do not affirmatively demonstrate incurable defects in the jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *See id.* If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing an opportunity to amend.[4] *See id.* at 227. In ruling on a plea to the jurisdiction, a court does not consider the merits of the parties' claims. *See id.* at 226–28; *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002).

## III. ANALYSIS

### A. Which petition is the consumer's live pleading?

■ When the trial court granted the City's plea to the jurisdiction, the last pleading that Gatesco had filed was its Fifth Amended Petition. The City urges this court not consider this pleading, arguing that Gatesco filed it late and without obtaining leave of court. Gatesco filed a motion for leave to file this pleading, and the City filed a motion to strike the pleading. The trial court did not rule on either motion. Under *Goswami*, this court presumes that the trial court granted leave to file the untimely Fifth Amended Petition and that the trial court considered this pleading because (1) the record is silent of any basis to conclude that the trial court did not consider this pleading; and (2) the City has not shown surprise or prejudice. *See Goswami v. Metropolitan Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex.1988); *Thomas v. Allstate Ins. Co.*, No. 14–05–00293–CV, 2006 WL 2290840, at *2 n. 3 (Tex. App.-Houston [14th Dist.] Aug. 10, 2006, no pet.) (mem. op.).

The City also asserts that Gatesco filed this pleading on May 22, 2007, during trial. But, in its final judgment, the trial court states that the case was called to trial on May 25, 2007, and that a bench trial was held on that date. The reporter's record reflects that the parties presented their opening statements, evidence, and closing arguments on May 25, 2007. Giving effect to the unambiguous language of the judgment, we conclude that this case was called to trial and tried on May 25, 2007. Therefore, the Fifth Amended Petition was filed before trial.[5]

---

4. In its plea to the jurisdiction, the City did not challenge the existence of jurisdictional facts using evidence; therefore, the standard of review for that situation does not apply. *See Miranda*, 133 S.W.3d at 227.

5. The reporter's record reflects that on May 7, 2007, the date set for a hearing on Gatesco's second application for temporary injunction, the trial court stated, "[I]t is my understand-

ing that this is a temporary injunction. Are you ready to go directly to trial?" After the attorneys answered in the affirmative, the trial court stated that "we are now going directly to trial on all matters." The trial court then recessed to allow the parties to address various matters, including the filing by the City of its plea to the jurisdiction, the filing by Gatesco of a response thereto, and a hearing

**B. Do subsections (a) and (d) of section 13.042 of the Texas Water Code deprive Texas courts of subject-matter jurisdiction over the consumer's claims?**

The City asserts that section 13.042(a) of the Texas Water Code deprives the trial court of subject-matter jurisdiction over this case and gives the City exclusive original jurisdiction. The City also asserts that section 13.042(d) of the Texas Water Code deprives this court of appellate jurisdiction over this case and gives exclusive appellate jurisdiction to the Texas Commission on Environmental Quality (hereinafter the "Commission.").[6] Section 13.042 of the Texas Water Code provides as follows:

(a) Subject to the limitations imposed in this chapter and for the purpose of regulating rates and services so that those rates may be fair, just, and reasonable and the services adequate and efficient, the governing body of each municipality has exclusive original jurisdiction over all water and sewer utility rates, operations, and services provided by a water and sewer utility within its corporate limits.

(b) The governing body of a municipality by ordinance may elect to have the commission exercise exclusive original jurisdiction over the utility rates, operation, and services of utilities, within the incorporated limits of the municipality.

(c) The governing body of a municipality that surrenders its jurisdiction to the commission may reinstate its jurisdiction by ordinance at any time after the second anniversary of the date on which the

municipality surrendered its jurisdiction to the commission, except that the municipality may not reinstate its jurisdiction during the pendency of a rate proceeding before the commission. The municipality may not surrender its jurisdiction again until the second anniversary of the date on which the municipality reinstates jurisdiction.

(d) The commission shall have exclusive appellate jurisdiction to review orders or ordinances of those municipalities as provided in this chapter.

(e) The commission shall have exclusive original jurisdiction over water and sewer utility rates, operations, and services not within the incorporated limits of a municipality exercising exclusive original jurisdiction over those rates, operations, and services as provided in this chapter.

(f) This subchapter does not give the commission power or jurisdiction to regulate or supervise the rates or service of a utility owned and operated by a municipality, directly or through a municipally owned corporation, within its corporate limits or to affect or limit the power, jurisdiction, or duties of a municipality that regulates land and supervises water and sewer utilities within its corporate limits, except as provided by this code.

Tex. Water Code Ann. § 13.042 (West 2008). We review the trial court's construction of applicable statutes de novo. *See Johnson v. City of Fort Worth*, 774 S.W.2d 653, 655–56 (Tex.1989). In construing a statute, our objective is to determine and give effect to the Legislature's

---

by the trial court on discovery motions. Though the judgment establishes that trial began on May 25, 2007, even if trial had begun on May 7, 2007, we would conclude that the *Goswami* rule applies to pleadings filed during trial.

6. Even though the City did not assert these arguments in the trial court, because these arguments go to subject-matter jurisdiction, we must consider them. *See Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 850–51 (Tex.2000); *Tex. Dep't of Transp. v. Olivares*, 316 S.W.3d 89, 95 (Tex.App.-Houston [14th Dist.] 2010, no pet.).

intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000). If possible, we must ascertain that intent from the language the Legislature used in the statute and not look to extraneous matters for an intent the statute does not state. *Id.* If the meaning of the statutory language is unambiguous, we adopt the construction supported by the plain meaning of the provision's words. *St. Luke's Episcopal Hosp. v. Agbor,* 952 S.W.2d 503, 505 (Tex.1997). We must not engage in forced or strained construction; instead, we must yield to the plain sense of the words the Legislature chose. *See id.*

### 1. Section 13.042(a)

The City argues that section 13.042(a) applies because this case involves "services provided by a water and sewer utility within [the City's] corporate limits." TEX. WATER CODE ANN. § 13.042(a) (stating that "the governing body of each municipality has exclusive original jurisdiction over all water and sewer utility rates, operations, and services provided by a water and sewer utility within its corporate limits."). We presume that this case involves "services" under this statute. *See* TEX. WATER CODE ANN. § 13.002(21) (West 2008) (defining "service" as used in section 13.042(a)). We also presume that these services were provided within the City's corporate limits. But, under the unambiguous language of the statute, the City is excluded from the definition of a "water and sewer utility," as used in section 13.042(a). *See* TEX. WATER CODE ANN. § 13.002(23) (defining "water and sewer utility" as used in section 13.042(a) and excluding from this definition "a municipal corporation . . . or a political subdivision of the state, except an affected county"); *City of Carrollton v. Tex. Comm'n on Envtl. Quality,* 170 S.W.3d 204, 210–11 (Tex.App.-Austin 2005, no pet.) (holding that municipalities are expressly excluded

from the definition of a "water and sewer utility" as used in section 13.042(a)). Under section 13.042(a), the Texas Legislature gives exclusive original jurisdiction to the governing body of each municipality over the rates, operations, and services of a private water and sewer utility (or a public entity not excluded from the definition of "water and sewer utility") operating within the corporate limits of that municipality. *See* TEX. WATER CODE ANN. § 13.042(a); *City of Carrollton,* 170 S.W.3d at 210–11.

The Supreme Court of Texas has not addressed this statutory-construction issue. In a recent case, this court indicated that, in section 13.042, the Legislature did not confer exclusive original jurisdiction on a municipality. *See Tara Partners, Ltd. v. City of S. Houston,* 282 S.W.3d 564, 571–75 (Tex.App.-Houston [14th Dist.] 2009, pet. denied). If the *Tara Partners* precedent is on point, then we would reject the City's argument based on that precedent. But, the City asserts that the *Tara Partners* case is not on point because it involved rate disputes between a municipally owned utility and its ratepayers rather than complaints by a water customer regarding late fees and a security deposit imposed by a municipality. *See id.* at 571. We presume for the sake of argument that the *Tara Partners* case is not on point, and research has not revealed any other case from this court that is on point.

Opinions from three sister courts of appeals support the City's argument. *See City of Donna v. Victoria Palms Resort, Inc.,* No. 13–03–375–CV, 2005 WL 1831593, at *3–4 (Tex.App.-Corpus Christi Aug. 4, 2005, pet. denied) (mem. op.) (holding that section 13.042(a) applied to dispute regarding water charges between municipality and water customer within corporate limits of municipality); *Flagship Hotel, Ltd. v. City of Galveston,* 117

S.W.3d 552, 562–63 (Tex. App.-Texarkana 2003, pet. denied) (agreeing that section 13.042(a) applied to dispute regarding water charges between municipality and water customer within corporate limits of municipality); *City of Galveston v. Flagship Hotel, Ltd.*, 73 S.W.3d 422, 426–27 (Tex. App.-Houston [1st Dist.] 2002, no pet.) (same as *City of Donna*). But we choose not to follow these opinions.

In none of these opinions do the courts mention or discuss the statutory definition of a "water and sewer utility," under which municipalities are expressly excluded. *See* TEX. WATER CODE ANN. § 13.002(23); *City of Donna*, 2005 WL 1831593, at *3–4; *Flagship Hotel, Ltd.*, 117 S.W.3d at 562–63; *Flagship Hotel, Ltd.*, 73 S.W.3d at 426–27. Giving effect to the unambiguous language of the statutory definition and of section 13.042(a), we conclude that section 13.042(a) does not apply in the case under review and therefore does not deprive the trial court of subject-matter jurisdiction. *See St. Luke's Episcopal Hosp.*, 952 S.W.2d at 505; *City of Carrollton*, 170 S.W.3d at 210–11. *But see City of Donna*, 2005 WL 1831593, at *3–4; *Flagship Hotel, Ltd.*, 117 S.W.3d at 562–63; *Flagship Hotel, Ltd.*, 73 S.W.3d at 426–27. Accordingly, section 13.042(a) is not a basis for concluding that the trial court lacks subject-matter jurisdiction in this case.

### 2. Section 13.042(d)

▮ The City also asserts that section 13.042(d) of the Texas Water Code deprives this court of appellate jurisdiction over this case and gives exclusive appellate jurisdiction to the Commission. Under section 13.042(d), the Commission has "exclusive appellate jurisdiction to review orders or ordinances of those municipalities *as provided in this chapter.*" TEX. WATER CODE ANN. § 13.042(d) (emphasis added). Under this section's unambiguous language, the Legislature did not confer any appellate jurisdiction on the Commission in this section; rather, the Legislature introduced the concept of appellate jurisdiction and referred to other parts of Chapter 13 of the Texas Water Code, in which the Legislature confers appellate jurisdiction on the Commission, for example, section 13.043. *See* TEX. WATER CODE ANN. § 13.043 (West 2008). But, no provision of Chapter 13 gives the Commission appellate jurisdiction over administrative proceedings relating to water services provided by a municipality to one of its customers within the municipality's corporate limits. *See, e.g.,* TEX. WATER CODE ANN. § 13.043(a) (giving parties to a rate proceeding before the governing body of a municipality the ability to appeal the decision of the governing body to the commission but stating that this subsection does not apply to a municipally owned utility).

The Supreme Court of Texas has yet to consider this issue of statutory construction, but our court has held that, in section 13.042(d), the Legislature did not confer exclusive appellate jurisdiction on the Commission. *See Tara Partners*, 282 S.W.3d at 571–75. The City argues that the *Tara Partners* case is not on point because it involved rate disputes rather than complaints by a water customer regarding late fees and a security deposit imposed by a municipality. *See id.* at 571. Again, we presume for the sake of argument that the *Tara Partners* case is not on point, and, again, we note that research has not revealed any on-point case from this court. And, again, we recognize that the same opinions from the same three sister courts of appeals support the City's argument. *See City of Donna*, 2005 WL 1831593, at *3–4; *Flagship Hotel, Ltd.*, 117 S.W.3d at 562–63; *Flagship Hotel, Ltd.*, 73 S.W.3d at 426–27. But, again, we choose not to follow these opinions.

In none of these cases do our sister courts explain how the language of section 13.042(d) itself gives the Commission appellate jurisdiction over the matters under review in the respective cases, nor do the courts in these cases point to language in other parts of Chapter 13 of the Texas Water Code that gives the Commission such jurisdiction. *See City of Donna,* 2005 WL 1831593, at *3–4; *Flagship Hotel, Ltd.,* 117 S.W.3d at 562–63; *Flagship Hotel, Ltd.,* 73 S.W.3d at 426–27. Giving effect to the unambiguous language of the statute, we conclude that section 13.042(d) does not give the Commission appellate jurisdiction in the case under review. *See St. Luke's Episcopal Hosp.,* 952 S.W.2d at 505; *City of Galveston v. Flagship Hotel, Ltd.,* 319 S.W.3d 948, 951 (Tex.App.-Austin 2010, no pet. h.) (noting that, in the *Flagship* litigation, after two courts of appeals held that the predecessor to the Commission had exclusive appellate jurisdiction under section 13.042(d), the Commission ruled that it does not have jurisdiction to regulate or supervise the service of a municipal utility operating within its corporate limits). *But see City of Donna,* 2005 WL 1831593, at *3–4; *Flagship Hotel, Ltd.,* 117 S.W.3d at 562–63; *Flagship Hotel, Ltd.,* 73 S.W.3d at 426–27. Accordingly, section 13.042(d) is not a basis for concluding that the trial court lacks subject-matter jurisdiction in this case.

## C. Has the consumer sufficiently pleaded a waiver of governmental immunity as to its claims against the municipality?

### 1. Governmental Immunity and Declaratory and Equitable Relief

■ When a political subdivision of the State is immune from suit under the doctrine of governmental immunity, courts lack subject-matter jurisdiction over the suit.[7] *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999). Generally, for there to be a waiver of immunity from suit, the Legislature must have waived immunity from suit as to the claim in question by clear and unambiguous language. *See* Tex. Gov't Code Ann. § 311.034 (West Supp.2007) (providing that a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language); *Tooke v. City of Mexia,* 197 S.W.3d 325, 332–33 (Tex.2006).

In its live pleading, Gatesco does not seek money damages against the City; rather, in various claims Gatesco seeks declaratory and injunctive relief. The Texas Declaratory Judgments Act contains a waiver of immunity from suit. *See* Tex. Civ. Prac. & Rem.Code Ann. § 37.006(b) (West 2008); *City of El Paso v. Heinrich,* 284 S.W.3d 366, 373 n. 6 (Tex.2009). But, this waiver is a limited one, and determining whether a particular request for declaratory relief falls within this waiver of immunity is a complicated matter under current law. Therefore, we begin by examining the law in this context.

■ If a party joins a governmental entity and seeks a declaration that an ordinance or statute is invalid, based on either constitutional or nonconstitutional grounds, immunity from suit is waived. *See City of Elsa v. M.A.L.,* 226 S.W.3d 390,

7. Often, courts use the terms "sovereign immunity" and "governmental immunity" interchangeably; nevertheless, they are two distinct concepts. *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 694 n. 3 (Tex.2003). "Sovereign immunity" refers to a State's immunity from suit and liability. *Id.* Its protection extends not only to the State, but also to the varying divisions of state government, including agencies, boards, hospitals, and universities. "Governmental immunity" protects political subdivisions of the State, including counties, cities, and school districts. *Id.*

391–92 (Tex.2007); *Heinrich,* 284 S.W.3d at 373 n. 6; *Lakey v. Taylor ex rel. Shearer,* 278 S.W.3d 6, 15 (Tex.App.-Austin 2008, no pet.); *see also City of Beaumont v. Bouillion,* 896 S.W.2d 143, 148–49 (Tex. 1995). Likewise, if a party joins a governmental entity and seeks a declaration construing an ordinance or statute, immunity from suit is waived. *See Tex. Lottery Comm'n v. First State Bank of DeQueen,* 325 S.W.3d 628, 633–35 (Tex.2010) (noting that governmental entities are to be joined in suits to construe their legislative pronouncements and that immunity from suits is waived in such suits); *Heinrich,* 284 S.W.3d at 373 n. 6 (citing *Leeper* regarding waiver of immunity as to declaratory-judgment suits to construe legislation); *Tex. Educ. Agency v. Leeper,* 893 S.W.2d 432, 445–46 (Tex.1994) (stating that governmental entities are not immune from suits seeking a construction of their legislative pronouncements).

■ Governmental immunity does not preclude prospective equitable remedies in official-capacity suits against government actors who allegedly have violated statutory or constitutional provisions, by acting without legal authority or by failing to perform a purely ministerial act. *See Heinrich,* 284 S.W.3d at 372–73. Nonetheless, in these *ultra vires* actions, immunity from suit is not waived as to the governmental entities themselves, even though a suit against a government actor in his official capacity is, for all practical purposes, a suit against the governmental entity. *See id.*

■ Governmental immunity generally bars suits for retrospective monetary relief, and private parties cannot circumvent a governmental entity's immunity from suit by characterizing a suit for money damages as a declaratory-judgment claim. *See Heinrich,* 284 S.W.3d at 368–69, 371. Therefore, if a litigant joins a

governmental entity and seeks an otherwise proper declaratory judgment construing or invalidating a statute, this claim is nonetheless barred by governmental immunity if the declaration sought would have the effect of establishing a right to relief against the governmental entity for which governmental immunity has not been waived. *See id.* at 372; *City of Houston v. Williams,* 216 S.W.3d 827, 828–29 (Tex.2007); *State v. BP Am. Prod. Co.,* 290 S.W.3d 345, 360 (Tex.App.-Austin 2009, pet. filed).

**2. The Consumer's Allegations**

In its live petition, Gatesco makes the following allegations:

● In violation of the TRO and in an "arbitrary, capricious, retaliatory, and vindictive manner" the City shut off Gatesco's water service even though Gatesco had paid the outstanding late fee, thus violating the Due Process Clause of the Fourteenth Amendment to the United States Constitution (hereinafter "Due Process Clause") or the Due Course of Law Clause of the Texas Constitution (hereinafter "Due Course of Law Clause"). The City shut off Gatesco's water service to provide a basis for requiring Gatesco to pay a security deposit of more than $35,000 in retaliation for Gatesco's challenge to the late fee.

● Section 47–69 of the City's Code of Ordinances, authorizing 10% late fees is excessive and constitutes a tax, in violation of article XI, section 5 of the Texas Constitution (stating that cities with a population greater than 5,000 may levy, assess, and collect taxes as may be authorized by law or by their charters) and article I, section 13 of the Texas Constitution (stating that excessive fines shall not be imposed).

- By various actions at the second administrative hearing, the City violated Gatesco's rights under Due Process Clause and the Due Course of Law Clause.
- The City's charges for services must be in amounts reasonably necessary for the services and cannot be a general means for raising revenue for the City. Because the late fee charged to Gatesco bears no relationship to any cost incurred by the City and because this fee is used to support the water and sewer systems, this fee is a tax. The City has no authority to levy this tax, and this tax violates article XI, section 5 and article I, section 13 of the Texas Constitution.
- The law allowing the City to charge 10% late fees and the implementation of that law by the City violates due process and equal protection guarantees under the Texas and United States Constitutions, is an excessive fine, an unlawful tax, and an unreasonable use of police power.

### 3. Analysis of Governmental Immunity as to the Consumer's Requests for Relief

Based on the above allegations, Gatesco seeks various types of declaratory and injunctive relief, which we now examine seriatim to determine if immunity from suit has been waived.

#### Permanent Injunction to Preclude Water Supply Shut Off

■ Gatesco seeks a permanent injunction precluding the City from ever shutting off the water supply to the Apartments. Gatesco does not tie this request to any alleged constitutional violation, the alleged invalidity of any statute, or to the construction of any statute. This request is not covered by the waiver of immunity in the Declaratory Judgments Act or by the waiver of immunity relating to constitutional violations. *See Tex. Lottery Comm'n,* 325 S.W.3d at 633–35; *City of Elsa,* 226 S.W.3d at 391–92; *Multi–County Water Supply Corp. v. City of Hamilton,* 321 S.W.3d 905, 907–09 (Tex.App.-Houston [14th Dist.] 2010, no pet. h.). Accordingly, we conclude that this request for a permanent injunction is barred by governmental immunity.

#### Requests for Certain Declarations Relating to Security Deposit

■ Gatesco also seeks the following declaratory relief: (1) a declaration that no basis exists to require Gatesco to post a security deposit and (2) a declaration that requiring Gatesco to post a security deposit under these circumstances violates Houston ordinances "requiring a recheck of [Gatesco's] credit stability" prior to requiring a security deposit. Gatesco does not base these requests on any alleged constitutional violation. In these requests Gatesco appears to allege statutory violations regarding the requirement that Gatesco post a security deposit. But, Gatesco has not sued any government officials alleging that they have acted without legal authority or failed to perform a purely ministerial act.[8] Furthermore, these dec-

---

8. Gatesco did sue Bill White, the mayor of the City. But, Gatesco sued White in his individual rather than his official capacity. *See Heinrich,* 284 S.W.3d at 372–73 (stating that *ultra vires* claims should be asserted against government actors in their official capacity). In its petition, Gatesco did not make any specific allegation against White and did not allege that White acted without legal authority or failed to perform a purely ministerial act. *See id.* The trial court dismissed the claims against White on the merits following a bench trial. The trial court did not dismiss the claims against White for lack of subject-matter jurisdiction. On appeal, Gatesco has not assigned error or presented appellate argu-

larations would have the effect of establishing a right to relief against the City for which governmental immunity has not been waived. We conclude that these requests for declaratory relief are barred by governmental immunity. *See Tex. Dep't of Ins. v. Reconveyance Servs., Inc.*, 306 S.W.3d 256, 258–59 (Tex.2010) (holding that trial court lacked subject-matter jurisdiction over *ultra vires* action that was filed only against the governmental entity); *BP Am. Prod. Co.*, 290 S.W.3d at 360 (stating that an otherwise proper declaratory-judgment claim is nonetheless barred by governmental immunity if the declaration sought would have the effect of establishing a right to relief against the governmental entity for which governmental immunity has not been waived).

### Requests for Certain Declarations Regarding Alleged Constitutional Violations

 Gatesco also seeks the following declaratory relief:

- a declaration that the law allowing the City to charge a late fee in excess of $1,000 for a payment that is one day late is an excessive fine and an unlawful tax

- a declaration that this law or the City's implementation of this law is unconstitutional and invalid in that it results in an unauthorized tax, a declaration that the resulting fee is unconstitutional, and an injunction from enforcing this tax

ment challenging the trial court's judgment that Gatesco take nothing against White.

9. We construe this request as a request for declaratory and injunctive relief based on the allegation that the City's imposition of the late fee and the security-deposit requirement violate substantive due process. *See City of San Antonio v. TPLP Office Park Props.*, 218

- a declaration that the late fee charged to Gatesco bears no reasonable relationship to any costs incurred by the City, is a general means of raising revenue, and is an illegal tax, and an excessive fine that violates the Texas Constitution

These requests for declaratory and injunctive relief (hereinafter the "Constitutional Declaration Requests") are based on alleged constitutional violations. We conclude that Gatesco has sufficiently pleaded a waiver of governmental immunity as to these requests for declaratory relief and that the trial court erred to the extent it dismissed these claims based on governmental immunity. *See City of Elsa*, 226 S.W.3d at 391–92; *Heinrich*, 284 S.W.3d at 373 n. 6; *City of Beaumont*, 896 S.W.2d at 148–49; *Lakey*, 278 S.W.3d at 15.

### Requests Regarding Alleged Due Process and Equal Protection Violations

 Gatesco also seeks the following declaratory relief based on alleged violations of equal protection and due process:

- a declaration that the law allowing the City to charge a late fee in excess of $1,000 for a payment that is one day late violates constitutional due process and equal protection, and is an unreasonable use of police power

- a declaration that the late fee charged to Gatesco and the requirement that Gatesco post a $35,000 deposit are both an unreasonable use of the police power and an injunction against enforcing either[9]

S.W.3d 60, 64–65 (Tex.2007) (discussing requirement under substantive due process that City's exercise of the police power cannot be arbitrary and unreasonable). If a party satisfies the heavy burden to show a violation of substantive due process, then the remedy is to void the action that violated substantive due process. *See Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1528 (5th Cir.1993) (stating that

- a declaratory judgment that Gatesco's due process rights were violated at the April 10, 2007, administrative hearing and that a new administrative hearing should be held to provide Gatesco with its due process rights

These requests for declaratory and injunctive relief (hereinafter the "Due Process Declaration Requests") are also based on alleged constitutional violations that provide a waiver of governmental immunity. The City, however, asserts that Gatesco has not sufficiently pleaded its entitlement to this relief because Gatesco has not pleaded a property interest subject to protection under the Fourteenth Amendment to the United States Constitution or under the Due Course of Law Clause of the Texas Constitution. *See Univ. of Tex. Med. Sch. at Houston v. Than,* 901 S.W.2d 926, 929 (Tex.1995) (noting that, to plead a valid claim based on Fourteenth Amendment or Due Course of Law Clause, a person must allege a life, liberty, or property interest protected by these constitutional provisions). We agree that Gatesco has not pleaded the existence of such a property interest.

Nonetheless, Gatesco's petition does not affirmatively demonstrate an incurable defect in this regard. *See, e.g., Hidden Oaks Ltd. v. City of Austin,* 138 F.3d 1036, 1046 (5th Cir.1998) (holding that owner of apartment complex in Texas had property interest in continuous utility service triggering Fourteenth Amendment protections). Furthermore, the City did not assert this pleading defect in its plea to the jurisdiction. In this context, it is appropriate to give Gatesco an opportunity on remand to amend its pleadings to allege a property interest subject to protection under the Fourteenth Amendment to the United States Constitution or under the Due Course of Law Clause of the Texas Constitution. *See Gatesco, Inc. v. City of Rosenberg,* 312 S.W.3d 140, 144—45 (Tex. App.-Houston [14th Dist.] 2010, no pet.). If in its amended pleading Gatesco does not sufficiently plead such an interest, then these three requests will be barred by governmental immunity and should be dismissed. *See id.*

### D. Is there any other basis for affirming the trial court's ruling as to the Constitutional Declaration Requests and the Due Process Declaration Requests?

In its plea to the jurisdiction, the City asserted that the trial court lacks jurisdiction because Gatesco did not plead the necessary prerequisites for enjoining enforcement of a penal statute. The City did not assert this argument in its appellate brief and stated at oral argument that it was abandoning this argument.[10]

In its plea, the City also asserted that governmental immunity bars any tort claims pleaded by Gatesco against the City. We conclude, however, that Gatesco has not pleaded any tort claims against the City. And the City did not assert any other basis for a jurisdictional dismissal in its plea that we have not addressed already.

For the first time on appeal, the City asserts that Gatesco failed to serve a copy of "the proceeding" on the Attorney General of the State of Texas, as required by Section 37.006(b) of the Texas Civil Prac-

---

"substantive due process may require courts to void certain types of government action"); *Williamson v. Guadalupe County Groundwater Conservation Dist.,* 343 F.Supp.2d 580, 600 (W.D.Tex.2004) (holding that plaintiff stated claim for substantive due process).

10. Even if the City had not abandoned this argument, we still would conclude that it lacks merit.

tice and Remedies Code. *See* Tex. Civ. Prac. & Rem.Code § 37.006(b) (West 2008). There is nothing in our record reflecting that such service has been effected. In a prior precedent this court concluded that such a failure is a jurisdictional defect, which would make it unnecessary to preserve error in the trial court. *See Commissioners Court of Harris County v. Peoples Nat'l Util. Co.*, 538 S.W.2d 228, 229 (Tex.Civ.App.-Houston [14th Dist.] 1976, writ ref'd n.r.e.). In subsequent cases, however, the Supreme Court of Texas may have implicitly overruled this court's *Commissioners Court* precedent. *See Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76–77 (Tex.2000); *City of Garland v. Louton*, 691 S.W.2d 603, 605 (Tex.1985) (per curiam). But, even under the *Commissioners Court* case, the remedy for the jurisdictional defect is a reversal of the judgment and a remand to allow a reasonable time for the plaintiff to serve the Attorney General as required. We need not and do not decide whether the *Commissioners Court* case is still good law because, in either event, we are reversing and remanding as to Gatesco's requests based on constitutional violations, and Gatesco will have a reasonable time to serve the Attorney General. If Gatesco fails to serve the Attorney General within a reasonable time, then the trial court should dismiss.

## IV. Conclusion

The trial court erred in dismissing the Constitutional Declaration Requests for lack of subject-matter jurisdiction. Accordingly, the trial court's dismissal of those requests is reversed and remanded. As to the Due Process Declaration Requests, Gatesco is entitled to an opportunity to amend its pleadings to allege a property interest subject to protection under the Fourteenth Amendment to the United States Constitution or under the Due Course of Law Clause of the Texas Consti-

tution. Because we are remanding requests for declaratory relief, we also reverse and remand as to Gatesco's request for costs and attorney's fees under the Texas Declaratory Judgments Act. On remand, the trial court shall dismiss this suit if, after a reasonable time, Gatesco has not served the Attorney General as required by section 37.006(b) of the Texas Civil Practice and Remedies Code. The remainder of the trial court's judgment is affirmed.